UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RONALD BURZLAFF,

        Plaintiff,

V.                                               Case No. 12-CV-92

THOROUGHBRED MOTORSPORTS, INC.,

        Defendant.

ORDER DENYING DEFENDANT'S MOTION FOR
JUDGMENT AS A MATTER OF LAW AND
AWARDING PLAINTIFF ATTORNEY'S FEES

### I. PROCEDURAL HISTORY

On December 16, 2011, Ronald Burzlaff ("Burzlaff") filed an action in Milwaukee County Circuit Court against Thoroughbred Motorsports, Inc. ("Thoroughbred") alleging that Thoroughbred violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq. and Wisconsin's Lemon Law, Wis. Stat. § 218.0171, with respect to a Stallion model motorcycle / motor trike Burzlaff purchased from Thoroughbred. (Docket No. 1-1.) On January 31, 2012, Thoroughbred removed the action to federal court. (Docket No. 1.) Following all parties consenting to the full jurisdiction of a magistrate judge, (Docket Nos. 8, 14), the matter was reassigned to this court, (Docket No. 15).

The matter was tried to a jury on April 8 – 10, 2013. The jury returned a verdict favorable to the plaintiff. (Docket No. 33.) The evidence was undisputed that Burzlaff repeatedly called Thoroughbred to report problems with his vehicle and, because the Stallion contained Ford components, Thoroughbred told him to take his vehicle to a Ford dealership for repairs. Burzlaff did

so, and despite Burzlaff leaving the vehicle with the Ford dealership for lengthy periods of time, the problems persisted.

Pursuant to that verdict, judgment was entered in accordance with Wis. Stat. § 218.0171(7) and Hughes v. Chrysler Motors Corp., 197 Wis. 2d 973, 542 N.W.2d 148 (1996), for double the plaintiff's pecuniary loss, for a total of $71,266.46, together with costs, disbursements, and reasonable attorney fees. (Docket No. 34.)

On April 24, 2013, the plaintiff filed his petition for attorney fees, (Docket No. 35), and bill of costs, (Docket No. 37). The defendant filed its objections to these matters, (Docket No. 40, 41), and the plaintiff has replied, (Docket Nos. 43, 44).

On May 2, 2013, the plaintiff filed a motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50, or in the alternative a motion for a new trial pursuant to Fed. R. Civ. P. 59. (Docket No. 39.) The plaintiff responded to this motion, (Docket No. 42), and the defendant has not replied. The pleadings on these matters are closed and these matters are ready for resolution.

The court shall grant a motion for judgment as a matter of law only if, "after a party has been fully heard on an issue during a jury trial …[,] the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue…." Fed. R. Civ. P. 50(a)(1); see also Phillips v. Cmty. Ins. Corp., 678 F.3d 513, 518 (7th Cir. 2012). Under Fed. R. Civ. P. 59(a)(1)(A), following a jury trial, the court may order a new trial under a wide variety of circumstances, including if the verdict is against the weight of the evidence, Mejia v. Cook County, 650 F.3d 631, 633 (7th Cir. 2011), or if the court's instructions misled the jury leading to prejudice to the complaining party, Briggs v. Marshall, 93 F.3d 355, 359 (7th Cir. 1996).

**II. DEFENDANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR IN THE ALTERNATIVE FOR A NEW TRIAL**

Under the Wisconsin Lemon Law, there are, generally speaking, two types of actions. See Smyser v. W. Star Trucks Corp., 2001 WI App 180, ¶8 247 Wis. 2d 281, 287, 634 N.W.2d 134,

2

136; Vultaggio v. Gen. Motors Corp., 145 Wis. 2d 874, 891, 429 N.W.2d 93, 99 (Ct. App. 1988). There is a (2)(a) action, see Wis. Stat. § 218.0171(2)(a); Wis. Civ. JI 3304, which can best be described as a simple breach of warranty action, and a (2)(b) action, see Wis. Stat. § 218.0171(2)(b); Wis. Civ. JI 3303, which affords the consumer far more expansive remedies including an option of demanding a replacement vehicle or a refund. Smyser, 2001 WI App 180, ¶9. The standard for a (2)(a) action is comparatively low; the plaintiff need prove only that the manufacturer failed to repair a non-conformity within the first year. Vultaggio, 145 Wis. 2d at 891, 429 N.W.2d at 99. In a (2)(b) action, the plaintiff must prove not only he complied with the (2)(a) requirements of reporting the nonconformity to the "manufacturer, the motor vehicle lessor or any of the manufacturer's authorized motor vehicle dealers" and "ma[de] the vehicle available for repair before the expiration of the warranty or one year after first delivery of the motor vehicle to a consumer," but also that a nonconformity persisted after a "reasonable attempt to repair." Id.

A "[r]easonable attempt to repair" is defined as either, at least four attempts to repair the same nonconformity, or the vehicle was out of service for a total of at least 30 days. Wis. Stat. § 218.0181(1)(h). If the plaintiff can prove that the nonconformity persists after a reasonable attempt to repair, the consumer can demand from the manufacturer either a replacement vehicle or that the manufacturer accept a return of the vehicle and refund the consumer's purchase price. Wis. Stat. § 218.0171(2)(b).

Although a (2)(a) claim was also presented to the jury, the present action was, at its core, a (2)(b) action. The plaintiff did not primarily seek to compel the defendant to repair the vehicle but rather sought a refund of his purchase price. The pattern jury instruction related to a (2)(b) action is Wis. Civ. JI 3303, which states as follows:

### 3303   LEMON LAW CLAIM:  OUT OF SERVICE WARRANTY NONCONFORMITY

Question 3 asks whether (<u>plaintiff</u>)'s vehicle was "out of service" for an aggregate of at least 30 calendar days because of any nonconformities (within the term of the warranty) (within one year after delivery).

To answer question 3 "yes," you must find that (<u>plaintiff</u>) notified the manufacturer or any authorized dealer of a (the) nonconformity (ies) and gave the manufacturer or dealer an opportunity to repair the condition or defect.  If repairs are not made and (<u>plaintiff</u>) thereafter continued to give them an opportunity to repair the nonconformity (ies), the 30-day clock starts running from the date of that initial failed repair opportunity.  As long as there exists notice and opportunity to repair with respect to a nonconformity, the 30-day clock runs.

"Out of service" is not limited to only those periods in which the vehicle is unavailable to (<u>plaintiff</u>).  "Out of service" includes those periods when the vehicle is not capable of rendering service as warranted due to a nonconformity, even though the vehicle may be in the possession of the consumer and may still be driven in spite of the nonconformity.

The court instructed the jury as follows:

LEMON LAW CLAIM:  OUT OF SERVICE WARRANTY NONCONFORMITY

Question 2 asks whether Ronald Burzlaff's vehicle was "out of service" for an aggregate of at least 30 calendar days because of any nonconformities within one year after delivery.

To answer question 2 "yes," you must find that Ronald Burzlaff notified the manufacturer or any authorized dealer of the nonconformities and gave the manufacturer, an authorized dealer, or any other repair facility acting on the manufacturer's behalf, an opportunity to repair the nonconformities. If repairs are not made and Ronald Burzlaff thereafter continued to give the manufacturer an opportunity to repair the nonconformities, the 30-day clock starts running from the date of that initial failed repair opportunity. As long as there exists notice and opportunity to repair with respect to a nonconformity, the 30-day clock runs.

"Out of service" is not limited to only those periods in which the vehicle is unavailable to Ronald Burzlaff. "Out of service" includes those periods when the vehicle is not capable of rendering service as warranted due to a nonconformity, even though the vehicle may be in the possession of the consumer and may still be driven in spite of the nonconformity.

The defendant contends that the court erred when it added the phrase "…or any other repair facility acting on the manufacturer's behalf" to the pattern instruction. (Docket No. 27 at 15.) The defendant argued at trial that the court was bound to follow the pattern jury instructions. When made at trial, the defendant's argument represented a fundamental misunderstanding as to the nature of pattern jury instructions.

As the defendant seems to now correctly acknowledge in his present motion, pattern jury instructions are not law, they are mere aids designed to assist the court in easily, yet accurately, instructing the jury as to the law in a case. Pattern jury instructions are crafted to address the most-typical factual scenario and thus might not be suitable for all cases. Conceivably, a court could "reinvent the wheel" in each case, ignore the pattern instructions and start from scratch by crafting its own jury instructions. This scenario is not uncommon when claims arise for which there is no pattern jury instruction. Of course, any jury instruction, whether a pattern jury instruction or one wholly crafted by the court, must accurately state the law.

Thus, the ultimate question in this case is, did the court accurately state the law when it instructed the jury that a consumer complies with his obligations under the Lemon Law by giving "any other repair facility acting on the manufacturer's behalf" an opportunity to repair the nonconformities?

Looking at the statute, § 218.0171(1)(h)1 states that there must be at least four attempts to repair the nonconformity by "the manufacturer, motor vehicle lessor or any of the manufacturer's authorized motor vehicle dealers," but, § 218.0171(1)(h)2 contains no reference as to who must attempt to repair the nonconformity during the 30-day out of service period. Likewise, Wis. Stat. § 218.0171(2)(a) is silent regarding to whom the consumer must make the vehicle available for repair but yet is implicit that it is ultimately the manufacturer's responsibility to ensure that the repairs are completed.

The defendant contends that because no other court has recognized the possibility that a consumer may "make[] the motor vehicle available for repair" by taking it, at the manufacturer's direction, to a certain repair facility rather than only an authorized dealership, this court has rewritten the statute. (Docket No. 39 at 2.) However, the defendant has failed to point the court to any instance where another court was confronted with the identical factual scenario presented in this

case. Simply because the court is presented with an issue of first impression is not reason in itself to blindly hold to an incomplete jury instruction.

The typical factual scenario in the Lemon Law claim will undoubtedly involve an automobile manufacturer with a network of dealerships, each with its own repair facilities; the consumer will "make[] the motor vehicle available for repair" by taking the vehicle to one of the manufacturer's dealerships; and the vehicle then will be repaired in the dealer's own repair shop. This is the scenario repeatedly played out in countless Wisconsin Lemon Law cases. Since pattern jury instructions attempt to address the most common factual scenarios, this is the situation the pattern jury instructions were obviously drafted to cover.

Notwithstanding the typical scenario, the statute does not require that repairs occur at a dealership. For example, in <u>Lamont v. Winnebago Indus., Inc.</u>, 569 F. Supp. 2d 806 (E.D. Wis. 2008) (granting defendant's motion for summary judgment on Lemon Law claim because plaintiffs neither purchased nor accepted transfer of the vehicle in Wisconsin), the relevant repairs occurred at repair facilities chosen by the manufacturer's roadside assistance program; the court's decision does not identify these facilities as dealers. <u>Id.</u> at 808. In fact, the pattern jury instruction does not explicitly require that the repair be made "directly" by a dealership or manufacturer. The pattern jury instruction, consistent with the statute, requires merely that the consumer "gave the manufacturer or dealer an opportunity to repair the condition or defect." What either shall do with this "opportunity" to comply with the obligation to repair the nonconformity is not dictated by the statute, and thus dealers and manufacturers are afforded some measure of flexibility as to how they will comply with the law. Thus, even under the pattern instruction, a jury could conclude that the vehicle was made available to a manufacturer notwithstanding the fact that the consumer never delivered the vehicle to a manufacturer or one of its dealers.

The plaintiff, in his initial submission, did not request the language the court utilized, but plaintiff did not object to the court's instruction. Nevertheless, the fact that both parties submitted the incomplete pattern instructions does not absolve the court of its ultimate responsibility to ensure that the jury is accurately instructed. Under the circumstances of this case, the pattern instructions were inadequate in explaining that a consumer complies with the statutory requirement to make a vehicle available for repair when he follows a manufacturer's instruction to take a vehicle to a specific facility. Thus, absent the court's additional clarification, the jury may have been misled (as the defendant would have surely attempted to do) into believing that the "opportunity to repair" the nonconformity can only be undertaken by a manufacturer or authorized dealership.

While the defendant regards the court's clarification as "giving the plaintiff a win,"(Docket No. 39 at 2), the defendant fails to mention that a similar clarification to pattern instruction Wis. JI 3304 arguably benefitted the defendant. Subsection (d) of the pattern instruction states that the plaintiff must prove "the nonconformity was not repaired by the manufacturer or its authorized dealer" as an element of the claim. Thus, under the circumstances of this case, the pattern instruction might have misled the jury to believe that a manufacturer, like Thoroughbred, who authorized repairs at a facility other than a dealership, failed to comply with its obligation under the Lemon Law. Accordingly, the court added the following sentences to the pattern instruction: "This does not require the manufacturer to repair the vehicle itself. The manufacturer may comply with the requirement that it repair the vehicle by directing the consumer to an authorized dealer or any other repair facility that will repair the vehicle on behalf of the manufacturer." (Docket No. 27 at 16.)

It is clear that this was not a pattern case and the pattern jury instructions were not wholly appropriate. Normally, there is no distinction between an authorized dealer and an authorized repair facility. As discussed above, in the ordinary case the consumer will be instructed to take his vehicle

7

to a dealership for any warranty service. But here the question of whether the plaintiff made the vehicle "available for repair" when he complied with the manufacturer's instructions and took the vehicle to a Ford dealership rather than one of the defendant's dealerships was the core of the case. Given the centrality of the issue and the lack of clarity in the pattern jury instruction, it was necessary for the court to modify the pattern jury instructions to accurately instruct the jury as to what was required of both the consumer and the manufacturer under the statute.

The evidence in this case was undisputed that when the plaintiff notified the defendant of the problems he was having with the vehicle, the defendant's employee repeatedly told him to take his vehicle to a Ford dealership for repairs. This was consistent with the defendant's representation in its product brochure where it states with respect to its Stallion vehicle: "Powered by Ford. Serviced by Ford." (Ex. 14.) The defendant boasted of its expansive "service network" that included Ford Motor Company's North American Dealers and therefore was "six times larger than the Harley Davidson Motor Company." (Ex. 14.) While it is undisputed that Ford's facilities were not the defendant's dealers, the vehicle warranty states, "In certain instances, Thoroughbred Motorsports may authorize repairs at other than Thoroughbred Motorsports dealer facilities." (Ex. 15 at 14.) But even absent this explicit caveat in the warranty, the court's conclusion regarding the instructions would be no different.

"Wisconsin's Lemon Law is obviously remedial in nature. As such, [the court] should construe the statute with a view towards the social problem which the legislature was addressing when enacting the law." Marquez v. Mercedes-Benz USA, LLC, 2012 WI 57, ¶23, 341 Wis. 2d 119, 132, 815 N.W.2d 314, 321 (quoting Hughes v. Chrysler Motors Corp., 197 Wis.2d 973, 983, 542 N.W.2d 148 (1996)). "Put another way, [the court] will liberally construe remedial statutes to suppress the mischief and advance the remedy that the legislature intended to afford." Garcia v. Mazda Motor of Am., Inc., 2004 WI 93, 273 Wis. 2d 612, 619, 682 N.W.2d 365, 368 (citing

8

Hughes, 197 Wis.2d at 979, 542 N.W.2d 148). Moreover, because the Lemon Law exists to protect and aid the consumer, any affirmative defenses or excuses by which a manufacturer may be able to avoid responsibility must be narrow. Marquez, 2012 WI 57, ¶32. A manufacturer must not be permitted to defeat a plaintiff's Lemon Law claim on the basis that the plaintiff did not take the vehicle to a dealership when it was the manufacturer that successfully lulled the plaintiff into a trap by repeatedly directing him to have warranty repairs done at a facility other than a dealership. Rewarding such action would be antithetical to the remedial purpose of the Lemon Law.

The defendant also argues that "…the Court simply should have just let the parties argue over whether or not Amato Ford was a 'Manufacturer's authorized dealer…'" (See, e.g., Docket No. 39 at 8). The court is not clear as the exact nature of the defendant's argument. If the defendant is raising an issue over whether Amato Ford was a Thoroughbred dealer, the answer is in the negative. There was no factual dispute for the jury to resolve in this regard. If the defendant is raising an issue over whether or not the defendant "authorized" the plaintiff to go to Amato Ford, the instruction given covers that with the phrase "or any other repair facility acting on the manufacturer's behalf."

If, however, the defendant's argument is attempting to equate "an authorized dealership" with a concomitant repair facility, there may be a factual disconnect. This is particularly true with specialty motor vehicles, such as a motor-trike at issue here, where a dealership may be a mere storefront without the capability of performing any form of service. For example, with respect to Ferraris, oft-referenced by defense counsel at trial, not all of its authorized dealers are also authorized service centers. See Ferrari S.p.A., available at http://www.ferrari.com/english/dealers/Pages/dealer_ locator.aspx, (noting, e.g., that Ron Tonkin Gran Turismo in Portland, Or. and Ferrari of San Diego are authorized dealers but not authorized service centers). Under such a scenario where a dealer is not a repair facility, it is the manufacturer or dealer that might be harmed by the

9

defendant's narrow reading of the law. A consumer could call up a manufacturer to report a nonconformity and then drop the vehicle off at a storefront dealership demanding that the car be repaired. When the dealership, lacking any repair facilities, is unable to repair the vehicle within 30 days, the consumer would arguably have a Lemon Law claim.

The relatively new Tesla Motors has an arrangement similar to the defendant where it has only a few places to buy a vehicle (technically not dealerships because all are owned and operated by the manufacturer) but a larger network of service centers. Compare http://www.teslamotors.com/findus/stores (listing Tesla stores) with http://www.teslamotors.com/findus/service (listing Tesla service centers). As the defendant recognized when it boasted in its product brochure of its large service network consisting of Ford dealerships, the availability of nearby service is undoubtedly an important factor in any consumer's purchasing decision. A consumer might reasonably be willing to travel a significant distance for the one-time act of purchasing a vehicle, but would be far less likely purchase that vehicle if it required making same trek to the same dealer every time that vehicle needed service over its lifespan. The defendant's interpretation of the Wisconsin Lemon Law whereby consumers would be required to travel to only dealerships for service, rather than a service center authorized by the manufacturer to perform service on behalf of the manufacturer, would dramatically alter the applicability of the Lemon Law for purchasers of vehicles from smaller manufacturers who rely upon entities other than dealerships to provide warranty service.

The defendant also notes in a footnote:

the Court allowed the standard instruction providing that the purchaser "notified the manufacturer or any authorized dealer of the nonconformities" (emphasis added) to remain, but curiously changed the language of the statute and the instruction as to where the repairs took place to include ". . . and gave the manufacturer, an authorized dealer, or any other repair facility acting on the manufacturer's behalf, an opportunity to repair the nonconformities.

(Docket No. 39 at 8 n.3.) There is nothing inconsistent or "curious" about this action; the defendant need only read the statute to see why this was done. Wis. Stat. § 218.0171(2)(a) states: "If a new motor vehicle does not conform to an applicable express warranty and the consumer reports the nonconformity to the manufacturer, the motor vehicle lessor or any of the manufacturer's authorized motor vehicle dealers and makes the motor vehicle available for repair…." The statute is clear in that it contains a finite list as to who must be notified of the nonconformity and the pattern jury instruction followed the statute. However, the statute is silent as to whom the consumer must make the vehicle available for repair. The pattern jury instruction, likely in an effort to encompass the vast majority to factual scenarios and the keep the instruction as clear as possible, simply copied the statutory articulation as to whom the consumer must notify into its articulation of who the consumer must make the vehicle available to for repair.

The defendant, in the court's view, simply misinterpreted the statute. It placed all its eggs in the basket of arguing that the plaintiff failed to make the vehicle available for repair because he took the vehicle to a Ford service center, as instructed by Thoroughbred, rather than an authorized Thoroughbred dealer. But there is no such requirement in the statute that the plaintiff ignore the manufacturer's instruction as to where to seek service and instead go to only one of the manufacturer's authorized dealerships. The statute says only that the consumer must make the vehicle available for repair and affords the manufacturer flexibility as to how it will repair the nonconformity.

As to the defendant's contention that the court erred in allowing the plaintiff's Magnuson-Moss claim to proceed to the jury, the court finds it unnecessary to consider whether this was error because any such error was plainly harmless. At trial, the defendant moved for judgment in its favor with respect to the plaintiff's Magnuson-Moss claim in light of the fact that the plaintiff agreed that he had not suffered any damages, e.g. he did not have to pay for a warranty repair for which he was

11

not reimbursed. The court inquired whether the failure to prove such damages would necessarily foreclose the plaintiff from obtaining attorney's fees for this claim if the jury concluded that the defendant violated the Magnuson-Moss Warranty Act. See 15 U.S.C. § 2310(d)(2). Neither party directed the court to any authority answering this question. Therefore, the court elected to follow the cautious course and permit the claim to proceed to the jury and, if necessary, later resolve the question of whether such fees were compensable notwithstanding the absence of other damages.

Although the jury found for the plaintiff on his Magnuson-Moss claim, in light of the jury's conclusion with respect to the plaintiff's duplicative but much more expansive Lemon Law claim, the plaintiff shall necessarily not recover on his Magnuson-Moss claim. The court finds no basis to conclude that by being asked to consider the Magnuson-Moss claim the jury's verdict with respect to the Lemon Law claim was, in any way, affected.

### III. PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

Having prevailed on his Lemon Law claim, the plaintiff is entitled to reasonable attorney's fees. Wis. Stat. § 218.0171(7); Kilian v. Mercedes-Benz USA, LLC, 2011 WI 65, ¶56, 335 Wis. 2d 566, 593, 799 N.W.2d 815, 829. This fee-shifting provision is an essential component of the Lemon Law's remedial scheme in that it "encourage[s] injured parties to enforce their statutory rights when the cost of litigation, absent the fee-shifting provision, would discourage them from doing so." Id.

Plaintiff seeks a total of $23,390.25 in attorney's fees. This represents slightly less than 120 hours of work at an hourly rate of $195.00. The defendant objects to only five specific entries.

The defendant contends that three entries were "double-billed" because they represent the work of another attorney in the office of plaintiff's primary counsel. He says that these "time entries purport to be the typical hand-holding that is sometimes necessary with clients, but should not be recoverable as an attorney fee." (Docket No. 40 at 2.)

The court disagrees. While counsel's colleague did not sign any of the pleadings in this matter and did not actively participate at trial, after reviewing the challenged items, the court has little difficulty concluding that it was reasonable for her to spend a total of 12 hours and 36 minutes assisting primary counsel in this case.

The defendant also objects to a $48.75 charge related to "Call from client, notes to file, send open records request to Greenfield PD." (Docket No. 40 at 2.) Plaintiff's counsel replies that this charge was related to his client alerting him to a concern that a suspicious vehicle was outside of his residence and belief that someone was watching him in relation to the present suit. Because the plaintiff contacted the police, plaintiff's counsel investigated the outcome of the matter by seeking a copy of the incident report. (Docket No. 44 at 2.) The court finds the time expended on this matter not related to the litigation of the present action. While counsel may have been offering assistance, the fact that his client had "suspicions" does not establish a sufficient nexus to the action to warrant an award of attorney fees for this item. This charge is not recoverable.

Finally, the defendant objects to $780.00 allegedly incurred after trial in this matter. (Docket No. 40 at 3.) The plaintiff responds that he erroneously indicated that work performed on April 5, 2013 occurred on April 15, 2013. (Docket No. 44 at 2.) Thus, the work occurred before trial. (Docket No. 44 at 2.) This explanation is self-evident in the description of this entry, which indicates the time on April 15, 2013 was spent preparing for trial. (Docket No. 36-1 at 6.) Naturally, an attorney would not prepare for trial after the trial was concluded, and therefore the court accepts counsel's explanation that this date was erroneous.

Based on the foregoing, the court shall award the plaintiff attorney fees in the amount of $23,341.50.

**IT IS THEREFORE ORDERED** that the defendant's motion for judgment notwithstanding the verdict or in the alternative for a new trial, (Docket No. 39), is **denied**.

**IT IS FURTHER ORDERED** that the plaintiff's petition for attorney's fees, (Docket No. 35), is **granted** in the amount of $23,341.50.

Dated at Milwaukee, Wisconsin this 19th day of June, 2013.

*[signature]*
AARON E. GOODSTEIN
U.S. Magistrate Judge